IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PEAC CONSTRUCTION SERVICES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> WANRACK, LLC, <br><br> Defendant. | Case No. 22-CV-2157-JAR-TJJ |

**MEMORANDUM AND ORDER**

On April 26, 2022, Plaintiff PEAC Construction Services, LLC ("PEAC") filed this action against Defendant WANRack, LLC ("WANRack"), alleging breach of contract; unjust enrichment/*quantum meruit*; suit on account; claims for prompt payment relief under the Missouri public and private prompt payment acts, Mo. Ann. Stat. §§ 34.057 and 431.180; and fraudulent inducement.  Before the Court is WANRack's Motion to Dismiss the claims for unjust enrichment/*quantum meruit* and prompt payment relief, both brought pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 8).  The motion is fully briefed, and the Court is prepared to rule.  For the reasons stated below, the Court denies WANRack's motion to dismiss the unjust enrichment/*quantum meruit* claim in Count II and for prompt payment under the Missouri private prompt payment act in Count IV.  The Court grants WANRack's motion to dismiss the claim for prompt payment under the Missouri public payment act in Count IV.

**I.      Factual Background**

The following facts are taken from PEAC's Complaint and assumed to be true for the purpose of deciding this motion.  PEAC is in the business of providing construction-related services in the areas of telecom design and installation.  WANRack specializes in custom-built

Private Fiber Wide Area Networks for K-12 schools across the nation.  On October 13, 2020, PEAC executed a Master Services Agreement ("MSA") with WANRack.  WANRack engaged PEAC's services, primarily through purchase orders, to hire and manage contractors to perform installation of under- and aboveground material.  WANRack also on occasion hired PEAC to perform engineering work.  The MSA sets forth the terms and conditions of the provision of services, which were to be specified in written purchase orders.  To alter a purchase order, the MSA required WANRack to issue a written change order.  Without a written change order, "price increases or extensions of time for performance are not binding on WANRack."[1]

Under the MSA, WANRack issued thirty-one written purchase orders covering work in Arizona, Georgia, Nevada, Washington, and Wisconsin.  Throughout the parties' course of dealing, WANRack never issued a written change order, despite regularly departing from its purchase orders.  WANRack required PEAC to rely on WANRack's estimates, which were often incorrect.  When PEAC exceeded estimated quantities, WANRack consistently paid for the actual costs incurred.  On several occasions, WANRack sought and paid for work beyond its purchase order without issuing a written change order.

On or about March 2, 2021, WANRack issued a purchase order for the Peninsula School District project in Gig Harbor, Washington.  The purchase order price was $1,475,329.25.  Following the initial bid, WANRack changed the design, which increased the quantities and cost of performance.  When PEAC required increased quantities and cost, PEAC documented the costs with photographs, videos, and weekly invoices at WANRack's request.  WANRack then sought to negotiate a change order reflecting the increased quantities and cost.  On September 15, 2021, WANRack proposed a change order price of $2,000,000.00.  PEAC responded that it

---

[1] Doc. 1-1, ¶ 15.

2

believed the project would cost approximately $3,200,000.00.  On September 20, 2021, PEAC notified WANRack that it would cease performance until WANRack issued a change order.  WANRack requested that PEAC continue to work, and PEAC did.  On October 14, 2021, WANRack proposed a change order price of $3,000,000.00.  On October 19, 2021, PEAC responded with a change order price of $3,540,328.00.

On October 25, 2021, WANRack terminated the MSA and Gig Harbor purchase order without paying PEAC its outstanding balance of $2,275,593.19.  Additionally, WANRack refused to pay outstanding contract balances and retainage from work performed in Arizona, Georgia, Nevada, and Wisconsin.  PEAC filed suit, alleging breach of contract; unjust enrichment/*quantum meruit*; suit on account; claims for prompt payment relief under the Missouri private and public prompt payment acts; and fraudulent inducement.  It seeks to recover the principal sum of $2,275,593.19 for work performed at WANRack's direction, as well as $216,693.35 for damages arising from wrongful termination of pending purchase orders.  WANRack filed a motion to dismiss Counts II and IV.

**II.     Standard**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above a speculative level" and must contain "enough facts to state a claim to relief that is plausible on its face."[2]  "[T]he complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[3]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully but requires more than "a sheer possibility."[4]

---

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[3] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[5] Finally, the Court must accept the plaintiff's factual allegations as true, view those facts in the light most favorable to the plaintiff, and assess whether they give rise to a reasonable inference that the defendant is liable in light of the applicable law.[6]

The Supreme Court has explained the analysis as a two-step process. First, the court must determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7] Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8] "A claim has facial plausibility when Plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."[9]

"The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."[10] If the Court looks to matters outside the pleadings, it generally must convert the motion to a Fed. R. Civ. P. 56 motion for summary judgment.[11] However, the Court may consider documents that are referred to in the

---

[5] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[6] *See Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

[7] *Iqbal*, 556 U.S. at 679.

[8] *Id.*

[9] *Id.* at 678.

[10] *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994).

[11] Fed. R. Civ. P. 12(d); *GFF Corp. v. Associated Wholesale Grocers*, 130 F.3d 1381, 1384–85 (10th Cir. 1997).

complaint if they are central to the plaintiff's claim and the parties do not dispute their authenticity.[12] Here, the Court considers the MSA because it is central to the claims in this case.

**III.   Discussion**

    **A.**    **Count II—Unjust Enrichment/*Quantum Meruit***

The parties agree that Missouri law applies in this litigation. WANRack contends that PEAC cannot sue under unjust enrichment/*quantum meruit* because a valid contract exists. PEAC argues that unjust enrichment/*quantum meruit* is a valid use of alternative pleading, and that the parties' contract does not cover the amount it seeks to recover under unjust enrichment or *quantum meruit*.

PEAC first contends that it may plead alternative, inconsistent claims under Fed. R. Civ. P. 8(d)(3). While PEAC is correct that the federal rules generally permit alternative remedies,[13] a claim is still subject to dismissal if it is precluded by law.[14] Under Missouri law, a plaintiff may only plead quasi-contractual remedies like unjust enrichment and *quantum meruit* where no remedy exists at law.[15] Missouri courts dismiss claims for unjust enrichment and *quantum meruit* when "the plaintiff has entered into an express contract for the very subject matter for which he seeks recovery, for the plaintiff's rights are limited to the express terms of the contract."[16]

---

[12] *See Alvarado v. KOB-TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007); *GFF Corp.*, 130 F.3d at 1384–85.

[13] Fed. R. Civ. P. 8(d)(3).

[14] *See, e.g.*, *Dubinsky v. Mermart, LLC*, No. 4:08–CV–1806, 2009 WL 1011503, at *5 (E.D. Mo. Apr. 15, 2009) (collecting cases).

[15] *Al-Khaldiya Elecs. & Elec. Equip. Co. v. Boeing Co.*, 571 F.3d 754, 759 (8th Cir. 2009) (citing *Holland v. Tandem Computers Inc.*, 49 F.3d 1287, 1289 (8th Cir.1995)).

[16] *Steelhead Townhomes, L.L.C. v. Clearwater 2008 Note Program, LLC*, 537 S.W.3d 855, 860 (Mo. Ct. App. 2017) (quoting *Howard v. Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010)).

To support its claim that it may plead unjust enrichment and *quantum meruit* in the alternative to breach of contract, PEAC cites *Ozarks Medical Center v. Imagine Advantage*[17] and *KC Excavating & Grading v. Crane Construction Co*.[18] In *Ozarks Medical Center*, the parties entered into a second, superseding contract.[19] The parties disputed which contract, if any, was in effect at the time of service.[20] In *KC Excavating & Grading*, the court noted that a party may plead *quantum meruit* in the alternative when the parties dispute whether the contract provided reimbursement for additional work or solely a "lump sum" payment.[21] Taken together, the cited authorities indicate that a plaintiff may plead unjust enrichment or *quantum meruit* in the alternative when the parties dispute the existence of a valid contract or whether the contract covers the subject matter at hand. Here, a valid contract—the MSA—governs the provision of services.

The parties, however, dispute whether the MSA precludes recovery for the excess work PEAC performed. WANRack first argues that PEAC may not recover for excess services because WANRack did not issue a written change order as required by the MSA. PEAC argues that WANRack led it to believe a written order was not necessary. Up until its termination, WANRack always paid PEAC for excess work without a written change order, despite requiring a change order in its MSA. When PEAC encountered increased costs during the Gig Harbor project, WANRack paid PEAC per unit after receiving documentation and invoices. When PEAC requested a change order before it provided further work, WANRack asked PEAC to

---

[17] No. 093370CVSREL, 2010 WL 1752171 (W.D. Mo. May 3, 2010).

[18] 141 S.W.3d 401 (Mo. Ct. App. 2004).

[19] *Ozarks Med. Ctr.*, 2010 WL 1752171, at *3.

[20] *Id.*

[21] *KC Excavating & Grading*, 141 S.W.3d at 409.

continue work while they negotiated a change order. After PEAC performed significant services, WANRack terminated their contract and refused to pay PEAC the remaining sum.

WANRack cites to *Air Cooling & Energy, Inc. v. Midwestern Construction Co. of Missouri*,[22] and *KC Excavating & Grading*[23] to supports its claim that the contract precludes recovery under *quantum meruit*. These cases, however, present no question of whether the subcontractor may recover for excess work under the contract. In *Air Cooling & Energy*, the subcontractor could not recover under *quantum meruit* because parties expressly disclaimed recovery for additional work. The contract limited payment to a "lump sum" and stated the general contractor will not make "additional payment to plaintiff or co-defendant for removal of rock."[24] In *KC Excavating & Grading*, the subcontractor could not recover under *quantum meruit* because the contract provided for recovery.[25] Because the contract provided unit prices for any additional work performed beyond the purchase order, permitting the subcontractor to recover under *quantum meruit* would duplicate recovery.[26]

While it was clear in *KC Excavating & Grading* and *Air Cooling & Energy* whether the contract provided recovery for excess work, this case is less clear. Unlike the contract in *Air Cooling & Energy*, the MSA does not disclaim payment for excess work. Nor does the MSA expressly provide payment for excess work like in *KC Excavating & Grading*. Certainly, the MSA provides a mechanism to cover excess work, in the form of change orders. As alleged in

---

[22] 602 S.W.2d 926 (Mo. Ct. App. 1980).

[23] 141 S.W.3d at 409.

[24] 602 S.W.2d at 929.

[25] 141 S.W.3d at 409.

[26] *Id.* ("Thus, allowing KC Excavating to collect both judgments would be to allow it to recover at least a portion of its damages twice.").

the Complaint, however, the parties' course of dealing suggests that the parties never utilized that mechanism.[27]

Next, WANRack argues PEAC cannot recover under *quantum meruit* because it only performed "additional," as opposed to "extra," work. In the context of building contracts, subcontractors cannot recover for additional work in *quantum meruit*.[28] Additional work is work "necessarily required in the performance of the contract, but the necessity of which arises from unanticipated conditions."[29] A subcontractor may only recover in *quantum meruit* for "extra work," which is "work not contemplated by the parties at the time of contract and entirely independent of what is required in performance of the contract."[30] "The determination of whether an activity is 'extra' and not something contemplated under the contract is a question of fact."[31] WANRack argues that any work PEAC performed beyond its original bid fell under the scope of the purchase order, and is thus "additional work." In its Complaint, PEAC alleges that WANRack repeatedly instituted design changes which increased the quantities and cost of performance, which may be arguably classified as "extra work." These allegations are sufficient to survive a motion to dismiss.[32]

---

[27] In its reply brief, WANRack raises for the first time an argument that Missouri law requires a written change order or waiver thereof before a subcontractor may recover for extra work. Doc. 20, at 11. To avoid sandbagging by counsel, the Court does not consider (or give much weight) to arguments raised for the first time in reply briefs. *See Ambac Assurance Corp. v. Fort Leavenworth Frontier Heritage Cmtys., II, LLC*, 315 F.R.D. 601, 608-09 (D. Kan. 2016); *Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1288 (10th Cir. 2003).

[28] *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d 703, 712 (Mo. Ct. App. 2002); *Air Cooling & Energy, Inc. v. Midwestern Constr. Co.*, 602 S.W.2d 926, 930 (Mo. Ct. App. 1980).

[29] *Bellon Wrecking & Salvage Co.*, 81 S.W.3d at 712 (quoting *Wisch Vaughan Constr. v. Melrose Props.*, 21 S.W.3d 36, 40 (Mo. Ct. App. 2000)).

[30] *Wisch & Vaughan Constr. Co.*, 21 S.W.3d at 40.

[31] *Bellon Wrecking & Salvage Co. v. Rohlfing*, 81 S.W.3d at 712 (citing *Gilmartin Bros. v. Kern*, 916 S.W.2d 324, 331 (Mo. Ct. App. 1995)).

[32] *See, e.g.*, *Doug Volz v. Provider Plus, Inc.*, No. 4:15CV0256 TCM, 2015 WL 3621113, at *5 (E.D. Mo. June 9, 2015) ("In their amended complaint, Plaintiffs label the work at issue in their unjust enrichment counts as 'additional.' Their allegations describe work that may arguably be classified as 'extra.' These allegations are sufficient to state a claim of extra, not additional, work.").

Because it is disputed whether the MSA precludes payment for additional or extra work, PEAC has alleged a plausible claim for alternative relief based on unjust enrichment and *quantum meruit* theory. Accordingly, WANRack's motion to dismiss Count II is denied.

### B. Count IV —Missouri Public and Private Prompt Payment Act

In Count IV, PEAC asserts a claim against WANRack under the Missouri Private Payment Act ("Private PPA"),[33] and the Missouri Public Prompt Payment Act ("Public PPA"),[34] for monies allegedly owed under purchase orders as well as related costs, attorney's fees, and interest. WANRack argues that PEAC has failed to raise a right to relief above the speculative level under either statute. In its response, PEAC withdraws or consents to dismissal without prejudice of its claims regarding the Public PPA,[35] so the Court need only address WANRack's argument regarding the Private PPA.

The Supreme Court of Missouri has established the elements of the Private PPA: "(1) that the parties enter into a private construction contract and (2) that payments be made pursuant to the contract."[36] The Complaint alleges that PEAC and WANRack, two private parties, entered into the MSA and thirty-one purchase orders for construction projects. PEAC alleges that WANRack has refused to pay outstanding contract balances and retainage from work performed in Arizona, Georgia, Nevada, and Wisconsin. These allegations are sufficient to state a claim under the Private PPA. Thus, PEAC's Private PPA claim survives WANRack's motion to dismiss.

---

[33] Mo. Ann. Stat. § 431.180.

[34] Mo. Ann. Stat. § 34.057.

[35] Doc. 14, at 11.

[36] *Vance Bros. v. Obermiller Constr. Servs.*, 181 S.W.3d 562, 564 (Mo. 2006).

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to Dismiss (Doc. 8) is **granted** in part and **denied** in part. The motion is **granted** without prejudice with respect to the Public PPA claim in Count IV.  The motion is **denied** with respect to the unjust enrichment and *quantum meruit* claims in Count II and the Private PPA claim in Count IV.

**IT IS SO ORDERED.**

Dated: October 3, 2022

S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE
